OPINION OF THE COURT
Arthur E. Blyn, J.
In this CPLR article 78 proceeding petitioner, the court-op-pointed administrator of the apartment building known as 286 Fort Washington Avenue, New York, New York (the premises), seeks an order annulling certain opinions and orders issued by the New York City Conciliation and Appeals Board (CAB) relating to the premises.
The proceedings before the CAB relating to the premises were commenced in July 1982 by the tenant of apartment 6E, who filed a complaint against the owner for alleged failure to maintain required services. The owner of the premises failed to respond to the complaint although duly served. The allegations in the tenant’s complaint were therefore deemed admitted, and the CAB issued order No. 22,203 on September 20, 1982, which directed the owner to correct the conditions complained of by the tenant.
*532 The CAB subsequently learned that a receiver had been appointed for the premises in June 1982. A copy of order No. 22,203 was served on the receiver. The receiver did not make the repairs, as directed in order No. 22,203.
By order dated December 6,1982 Judge Dankberg of the Civil Court appointed petitioner administrator of the premises under RPAPL 778, in the context of a proceeding brought against the owner by the tenants of the premises. Judge Dankberg’s order provided, inter alla, that:
“10. The court retains jurisdiction regarding the Administrator and all cases to which he is a party. The Court may resolve any disputes arising from this order on one weeks [sic] notice to the Administrator and attorneys of all parties who have appeared in this proceeding * * *
“12. The Administrator shall file monthly accountings with the Court and shall send copies to Mr. Genuth, Mr. Roth and the Chairperson of the Tenants Association.”
Respondent (as successor to the CAB) concedes that the CAB was advised by the tenant of apartment 6E of the appointment of petitioner as an article 7-A administrator on January 31, 1983.
Following the appointment of petitioner, the tenant complained to the CAB that the repairs directed by order No. 22,203 had still not been made. On February 17, 1983 the CAB issued compliance order No. 22,203-C-488, which purported to conditionally fine the “receiver” (who the CAB knew was no longer in control of the premises) the sum of $325, and which further provided: “In the event the receiver fails to pay this fine and to establish that it has completed compliance with Board Order Number 22,203 and this Order within [31 days], the Board shall without further notice expel the receiver from the Rent Stabilization Association and shall notify the Department of Housing Preservation and Development to place the subject apartment or all of the rent stabilized apartments in the subject building under Rent Control.”
Compliance order No. 22,203-C-488 was served on the owner of the premises and petitioner on or about February 17, 1983.
Petitioner still did not make the repairs directed by the CAB. Petitioner states that he “did not believe that he had to answer to the [CAB] with respect to the issue of repairs and, therefore, perhaps, mistakenly, did not pay sufficient heed to the Orders issued. Petitioner believed he was only accountable to the Court which appointed him 7A administrator of the subject building.”
*533 On May 6, 1983 the CAB issued expulsion order No. 720, which terminated the administrator as a member in good standing of the Rent Stabilization Association as to apartment 6E. The apartment was referred to the Department of Housing Preservation and Development to subject it to rent control.
On or about May 7, 1984 petitioner commenced this proceeding under CPLR article 78 to annul CAB opinion Nos. 22,203 and 22,203-C-488, and expulsion order No. 720, as arbitrary, capricious, in violation of law and in excess of the CAB’s jurisdiction.
The first issue to be disposed of by the court is whether this proceeding is barred by the four-month Statute of Limitations (CPLR 217), as raised by respondent’s second affirmative defense. To the extent that the petition attacks the CAB’s determinations as being arbitrary and capricious it is clearly time barred, as the four-month Statute of Limitations commenced to run from the dates when the determinations became final and binding upon petitioner (or his predecessors in interest) — in this case, certainly no later than May 1983, when petitioner received notice of expulsion order No. 720. (See, Matter of Meliti v Nyquist, 41 NY2d 183; Matter of Davis v Westchester County Personnel Off., 75 AD2d 600.)
However, that aspect of the petition which alleges acts by the CAB in excess of its jurisdiction is not subject to dismissal under CPLR 217 (see, Matter of Foy v Schechter, 1 NY2d 604; Lutheran Church in Am. v City of New York, 27 AD2d 237). As the Court of Appeals stated in Matter ofFoy v Schechter (supra, at p 615): “Insofar as concerns the four months’ Statute of Limitations prescribed by section 1286 of the Civil Practice Act, this bars only those parts of the petition which attack the grading resolution by the Municipal Civil Service Commission upon the ground of arbitrariness * * * [s]uch an attack would need to be made in an article 78 proceeding instituted directly against the Municipal Commission, which would, of course, have to be instituted within the four months’ period limited by section 1286. It is otherwise where the commission’s resolution is attacked for lack of power”. (Citations omitted; emphasis added.) Indeed, it has been stated that where the article 78 proceeding is in the nature of the formerly used writ of prohibition — i.e., it seeks to. prevent administrative bodies or officers from exercising judicial or quasi-judicial functions in excess of their jurisdiction — “the uncertainty as to what triggers the statute of limitations makes it distinctly possible that there is, in effect, no *534 statute of limitations in such a proceeding.” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C217:l, p 508, citing NY Judicial Council, Third Annual Report and Studies, at 183 [1937].)
Accordingly, the court will address that part of the within petition which alleges that the CAB lacked the authority or power to render the determinations complained of.
Petitioner argues that an article 7-A administrator is governed solely by the terms of the order appointing the administrator and the further directives of the court. Respondent takes the position that RPAPL 778 does not affect its (and formerly the CAB’s) broad authority to order compliance with the Rent Stabilization Law and Code, where an administrator is in violation thereof. This court believes the answer lies somewhere in between these two interpretations.
The court does not agree with petitioner that the maintenance and repair work ordered by the CAB conflicted with his duties under RPAPL 778 and the December 6, 1982 court order. It is true that pursuant to RPAPL 778 and the order, petitioner was required to dispose of the rents and other moneys deposited with him according to a specified order of priority. RPAPL 778 (1) (a) expressly permits, however, exceptions for “ordinary repairs and maintenance” — a category in which the work ordered by the CAB (e.g., repairing the building’s intercom and front door lock) clearly falls.
Nonetheless, the court believes that the CAB, upon learning of the appointment of petitioner as administrator for the subject premises, should have looked to the Civil Court for enforcement of its order No. 22,203. Judge Dankberg retained jurisdiction regarding petitioner under the terms of his order, at least partly for the purpose of overseeing the performance of petitioner’s duties. Any punishment for a breach of those obligations was within the sole purview of the Civil Court.
The CAB (now DHCR) is accorded broad authority to enforce the Rent Stabilization Law and Code. This court does not mean to imply that such authority is abrogated by the appointment of an administrator. The CAB, with its investigatory personnel and hearing procedures, must still determine whether an administrator has acted (or failed to act) in violation of the Code. The limited means of punishment against landlords which are available to the CAB, however, are clearly in conflict with the very purpose of RPAPL 778 and thus may not be employed.
The instant case is a perfect example. Under compliance order No. 22,203-C-488 and expulsion order No. 720, petitioner was *535 fined the sum of $325 and expelled from the Rent Stabilization Association as to apartment 6E. As for the fine, this punishes petitioner not one bit, but does work to the detriment of the subject premises — since the CAB does not have the power to require the administrator to pay the fine personally (or out of his statutory fees), such fine would merely be paid out of the rent moneys which should be applied solely for the benefit of the building and its tenants. Similarly, subjecting apartment 6E to rent control has little effect upon petitioner (except that he gets a 5% fee of a reduced rent), but once again the substantial decrease in rental income from that apartment could severely harm the interests of the other tenants.
The proper procedure here was for the tenant of apartment 6E (or the CAB) to make application to the Civil Court for an order compelling petitioner’s compliance with CAB order No. 22,203, and for appropriate punishment upon a failure to comply. Such punishment could obviously have included a reduction of, or assessment against, petitioner’s fees, or the removal of petitioner and the appointment of a new administrator. The Civil Court had the power to enforce compliance with the Rent Stabilization Law without prejudicing the building and its tenants, whereas the CAB did not.
The court therefore finds that the CAB exceeded its jurisdiction in issuing compliance order No. 22,203-C-488 and expulsion order No. 720, and those orders are therefore vacated and annulled pursuant to CPLR 7803 (2).