**AT & T CORP., Plaintiff,**

v.

**AMERICAN CASH CARD CORP.
d/b/a Telephonica and TSI
One, Defendant.**

No. 97 Civ. 7163(DC).

United States District Court,
S.D. New York.

Feb. 10, 1999.

---

Sidley & Austin, by Alan M. Unger, Elizabeth M. Sacksteder, New York City, for plaintiff.

Handal & Morofsky, by Anthony H. Handal, Norwalk, Connecticut, for defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

In this action, plaintiff AT & T Corp. ("AT & T") seeks to recover from defendant American Cash Card Corp. ("Amcash") an unpaid debt owed for telephone services provided by AT & T to Amcash. In its answer to the complaint, Amcash asserted counterclaims against AT & T for unfair competition, deceptive practices under N.Y.Gen.Bus.L. § 349, and unjust and unreasonable practices under 42 U.S.C. § 201(b), which are based on facts that have no connection to the facts underlying AT & T's claims against Amcash. In fact, Amcash's counterclaims arise out of the same transaction or occurrence as certain counterclaims asserted by AT & T against Amcash in a separate lawsuit.

AT & T moves to dismiss Amcash's counterclaims in this action on the ground that they should have been asserted by Amcash as compulsory counterclaims in the prior action, pursuant to Fed.R.Civ.P. 13(a). Alternatively, AT & T moves to dismiss the counterclaims pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Amcash cross-moves for leave to amend its counterclaims.

For the reasons that follow, I hold that Amcash is barred from asserting its counterclaims in this action under the compulsory counterclaim rule. Accordingly, AT & T's motion is granted and Amcash's counterclaims are dismissed. Amcash's cross-motion for leave to file amended counterclaims is denied.

### BACKGROUND

Amcash is in the business of purchasing outgoing international long distance phone service from common carriers, which it then resells to its customers. AT & T is a regulated common carrier that provides interstate and international long-distance telephone services.

## A. *The Uniplan Action*

On December 15, 1995, Amcash filed an action in this Court, entitled *American Cash Card Corp., et al. v. AT & T Corp.*, 95 Civ. 10607 (the "Uniplan Action"). In the Uniplan Action, Amcash alleges that, in November of 1994, it agreed to enroll in an AT & T discount long-distance plan known as the Uniplan Global Discount Plan ("Uniplan"). (Amcash's Compl. ¶ 6). Because Amcash's business produced a call volume that was much greater than a single Uniplan account was designed to accommodate, resulting in exorbitantly high rates charged to Amcash, AT & T allegedly proposed a plan by which Amcash could maintain several Uniplan accounts with AT & T, which would lower the overall rates charged to Amcash. (*Id.* ¶ 7).

Based on an initial 13–month projection, Amcash purportedly would receive a 78% discount on the gross tariff rates for its use of the Uniplan services under the proposed plan. (*Id.* ¶ 9). To maximize Amcash's savings under the plan, however, AT & T would have to allow Amcash to open as many Uniplan accounts as would be necessary to make maximum use of the discounts, bonuses, and credits available in connection with Uniplan accounts, and agree to spread billing over the accounts in a manner that would optimize the use of discounts, bonuses, and credits. AT & T allegedly represented that it would agree to both conditions. (*Id.* ¶ 10). Additionally, AT & T allegedly represented that, after 13 months, Amcash would be permitted to terminate the Uniplan without penalty, even though the Uniplan was a 36–month contract, as long as Amcash met or exceeded its volume guarantees during that 13–month period. Alternatively, AT & T allegedly agreed to permit Amcash to consolidate its multiple Uniplan accounts into a single account, at the same or lower rates, after 13 months. (*Id.* ¶ 11). Finally, pursuant to the proposed plan, AT & T agreed to provide Amcash with call detail and billing software. (*Id.* ¶ 18). In reliance on the above representations by AT & T, Amcash entered into 45 Uniplan contracts with AT & T between November 29, 1994 and March 10, 1995. (*Id.* ¶ 13).

Thereafter, Amcash contends that AT & T reneged on its promises by (1) refusing to permit Amcash to open more accounts after the initial 45, (2) offering to permit Amcash to consolidate its Uniplan accounts into a single account, but at a higher rate, rather than a lower rate as originally promised, (3) failing to allocate Amcash's call traffic to optimize its rates, (4) failing to provide adequate call detail and billing software, and (5) ultimately threatening to terminate Amcash's service based on Amcash's failure to pay $34 million in overdue charges accrued on its Uniplan accounts. (*Id.* ¶¶ 14–16, 18, 21). On the basis of these facts, Amcash asserted claims against AT & T for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and violation of 47 U.S.C. § 201(a), which requires a common carrier to provide service upon reasonable request. (*Id.* ¶¶ 22–43).

AT & T filed an Answer and Counterclaims in the Uniplan Action on January 4, 1996, and a superseding First Amended Answer and Counterclaims on February 27, 1996. In the First Amended Answer and Counterclaims, AT & T asserted several compulsory counterclaims. These compulsory counterclaims seek payment for amounts due pursuant to tariff on Amcash's Uniplan accounts. Specifically, AT & T's First Counterclaim seeks in excess of $42 million in overdue usage charges on Amcash's Uniplan accounts; the Third Counterclaim seeks termination charges exceeding $55 million for the early disconnection of Amcash's Uniplan accounts; and the Fourth Counterclaim seeks to recover an undercharge of $3.5 million resulting from credits that had erroneously been applied to Amcash's Uniplan accounts. (AT & T's 1st Am. Answer & Countercls. ¶¶ 60–76, 87–102). In addition, AT & T asserted a permissive counterclaim seeking payment on another long-distance account that Amcash had opened with AT & T that was unrelated to the Uniplan accounts. (*Id.* ¶¶ 77–86). AT & T also joined as counterclaim defendants Victor Alves and Raul Alves, the two principals of Amcash.

On April 1, 1996, Amcash filed a Reply to AT & T's counterclaims. Victor Alves and Raul Alves filed what they termed an "An-

swer" to AT & T's "Third–Party Complaint." Neither pleading purports to assert any additional claims against AT & T relating to Amcash's purchase of Uniplan services in 1994 through 1995. (*See* Amcash's Reply to Countercls.; Alves's Answer).

### B. *The Private Line Action*

In addition to its Uniplan accounts with AT & T, Amcash also opened other accounts with AT & T, including several for the provision of certain dedicated high-capacity circuits. Such dedicated circuits provide a private, direct link ("private lines") between telecommunications equipment at Amcash's premises, or that of its customers, and AT & T's long-distance network, thereby permitting AT & T and its customers to bypass the local telephone company's public, switched network over which Amcash's and its customers' calls would otherwise have to travel to reach AT & T's long-distance network. AT & T leased these private lines to Amcash for a flat, monthly fee.

AT & T contends that its billing records show that by September of 1995, Amcash's private line accounts were seriously in arrears due to its failure to pay the monthly charges. The debt was referred to a collection agency, and the collection agency ultimately asked a law firm under contract to it to commence suit against Amcash to recover the debt owed to AT & T. Hence, on July 16, 1997, AT & T filed an action against Amcash in Supreme Court, New York County to recover on the debt (the "Private Line Action"). (*See* AT & T's Compl.).

Amcash removed the action to this Court on September 24, 1997, and I accepted the case as related to the Uniplan Action. On the same day, Amcash answered the complaint in the Private Line Action and asserted three counterclaims. (*See* Amcash Verified Answer & Countercls.). AT & T contends that Amcash's counterclaims in this action are entirely unrelated to the claims asserted in AT & T's complaint. Instead, AT & T argues, they relate to the Uniplan accounts that are the subject of

claims and compulsory counterclaims asserted in the Uniplan Action. In fact, Amcash's Verified Answer and Counterclaims asserts no new factual allegations whatsoever, and a review of the pleading demonstrates that the factual allegations raised therein are virtually identical to the factual allegations set forth in Amcash's complaint in the Uniplan Action. The only substantive difference between Amcash's Verified Answer and Counterclaims in the Private Line Action and its complaint in the Uniplan Action is that the former pleading asserts three new claims—for unfair competition, deceptive practices under N.Y.Gen.Bus.L. § 349, and unjust and unreasonable practices under 47 U.S.C. § 201(b)—that Amcash failed to assert either in its complaint or in its reply filed in the Uniplan Action.

In light of the foregoing, AT & T moves to dismiss the counterclaims in this action pursuant to Fed.R.Civ.P. 13(a). AT & T argues that, because these three counterclaims arise from the same transaction or occurrence as AT & T's counterclaims asserted in the Uniplan Action, pursuant to Fed.R.Civ.P. 13(a), they are deemed compulsory counterclaims. Accordingly, if Amcash wanted to assert them, it was required to do so in its reply in the Uniplan Action. As Amcash failed to properly assert them in the Uniplan Action, it waived its right to assert them at all. Alternatively, AT & T moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Amcash opposes the motion, contending that it intended to file an amended complaint [1] and that AT & T's former counsel purportedly agreed not to respond to Amcash's counterclaims in this action until Amcash did so. Accordingly, Amcash cross-moves for leave to amend its counterclaims.

### *DISCUSSION*

### A. *AT & T's Motion to Dismiss*

■ Federal Rule of Civil Procedure 13 provides, in pertinent part:

> the claims asserted as counterclaims in this action, or that AMCASH intended to amend its counterclaims in this action.

---

**1.** It is unclear whether this statement means that AMCASH intended to file an amended complaint in the Uniplan action, in which it would assert

**(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13(a). If not asserted in a responsive pleading, a compulsory counterclaim is forever barred. *See Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 160 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Quick Container Servs., Inc. v. Interpool Ltd.,* 115 F.R.D. 59, 60 (S.D.N.Y.1987).

■ The compulsory counterclaim rule applies with equal force to factually related claims that a defendant has against a plaintiff and to claims that a plaintiff may have against a defendant arising out of the same "transaction or occurrence" that is the subject matter of the defendant's counterclaim, even if the plaintiff elected not to pursue that claim in its initial complaint. Indeed, "[i]f plaintiff has a claim arising from the same transaction as the one involved in defendant's counterclaim—a claim that would constitute a compulsory counterclaim under Rule 13(a)— he must assert it in the reply or be barred from bringing a later action on it." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1188, at 28–29 (2d ed.1990); *see also Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1202 (2d Cir.1970) (claim asserted by plaintiff in later-filed action properly held to be compulsory counterclaim to defendant's counterclaim in first-filed action that should have been asserted in plaintiff's reply to defendant's counterclaim).

■ In the Second Circuit, the test for determining whether a counterclaim is compulsory is "whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are 'so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991) (quoting *United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979)); *see also Greyhound Exhibitgroup,* 973 F.2d at 160; *Mellon Bank, N.A. v. United Bank Corp.,* No. 91 Civ. 1066, 1994 WL 722003, at *3 (N.D.N.Y. Dec. 22, 1994); *Quick Container,* 115 F.R.D. at 60.

■ In light of these standards, it is clear that the counterclaims Amcash has asserted in this action in fact should have been asserted as compulsory counterclaims in the Uniplan Action.[2] The claims and counterclaims in the Uniplan Action involve the parties' transactions in connection with Amcash's Uniplan accounts. Specifically, Amcash seeks damages for AT & T's alleged failure to live up to its promises and representations under the Uniplan agreement, while AT & T seeks to recover money allegedly due from Amcash on those accounts. In contrast, in the Private Line Action, AT & T seeks to recover amounts due from Amcash on accounts other than the Uniplan accounts. Amcash's counterclaims in the Private Line Action, however, appear to have nothing to do with Amcash's private line accounts. Indeed, the facts underlying Amcash's counterclaims in the Private Line Action appear to be a simple regurgitation of the facts set forth in its complaint in the Uniplan Action, and thus a "logical relationship" naturally exists between the claims asserted there and the counterclaims asserted here. Indeed, the very fact that Amcash recited the same facts in its answer and counterclaims here demonstrates that any new claims based on those

---

**2.** Alternatively, AMCASH could have moved for leave to amend the complaint in the Uniplan Action and added its claims for unfair competition, deceptive practices, and unjust and unreasonable practices. *See Jenkins v. Sea–Land Serv., Inc.,* No. 92 Civ. 2380, 1994 WL 445642, at *3 (S.D.N.Y. Aug. 17, 1994) (noting that, "[a]lthough the Federal Rules of Civil Procedure do not expressly authorize a plaintiff's bringing of counterclaims in reply to a defendant's counterclaims," courts do allow it, but "for reasons of clarity and practicality it has been held that it is 'better to treat a "counterclaim in reply" as an amendment to the complaint'") (quoting *Electroglas, Inc. v. Dynatex Corp.,* 473 F.Supp. 1167, 1171 (N.D.Cal.1979)).

underlying facts must necessarily arise from the same "transaction or occurrence" underlying the claims and counterclaims asserted in the Uniplan Action.

In opposition, Amcash contends that the counterclaims asserted in this action arise from a transaction or occurrence that is separate from that which gives rise to the Uniplan Action. Conceding that the Private Line Action seeks payment for amounts past due on accounts other than the Uniplan accounts, Amcash argues that, nevertheless, it was AT & T's failure to provide call detail in connection with the Uniplan accounts that rendered it impossible for Amcash to obtain payment from its customers for private line services, which, in turn, rendered Amcash unable to pay AT & T for the private line services provided.

This argument lacks merit. While it is not entirely clear from the pleadings whether, as Amcash contends, under the Uniplan agreement AT & T was obligated to provide call detail to Amcash in connection with its non-Uniplan accounts, Amcash has recited facts in its Answer and Counterclaims in this action that are virtually identical to the facts alleged in its complaint in the Uniplan Action. Hence, the only sensible conclusion is that, even if the furnishing of call detail by AT & T was required in connection with Amcash's non-Uniplan accounts, any claims arising out of AT & T's alleged failure to furnish call detail on the non-Uniplan accounts should have been asserted in the Uniplan Action once AT & T asserted claims against Amcash for nonpayment.

Amcash further argues that, if its counterclaims involve the same transaction as the Uniplan action, then AT & T's claims in this action also involve the same transaction as the Uniplan Action. This argument also fails. On its face, AT & T's complaint in this action shows that the Uniplan accounts and the non-Uniplan accounts involved entirely separate transactions and are predicated on different sets of facts. Rather, by suggesting that AT & T had an obligation to furnish call detail for all of Amcash's accounts with AT & T and that its failure to do so damaged Amcash, it is Amcash who unwittingly ties the two actions together. Amcash offers no

support for this contention, but even if it were true, that fact would only reinforce the conclusion that Amcash's claims for unfair competition, deceptive practices, and unjust and unreasonable practices should have been asserted in the Uniplan action. The inescapable conclusion is that Amcash's counterclaims here are "so logically connected" to the claims and counterclaims asserted by the parties in the Uniplan Action "that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir.1979).

I hold that Amcash's claims for unfair competition, deceptive practices under N.Y.Gen. Bus.L. § 349, and unjust and unreasonable practices under 47 U.S.C. § 201(b) arise from the same transaction or occurrence as AT & T's counterclaims in the Uniplan Action and that, therefore they should have been asserted in Amcash's reply in that action. As Amcash failed to assert the claims in that action, Amcash is barred from asserting them here. Accordingly, AT & T's motion to dismiss Amcash's counterclaims is granted.

Having granted AT & T's motion to dismiss the counterclaims based on Amcash's failure to assert them as compulsory counterclaims in the Uniplan Action, I need not consider whether the counterclaims state a claim upon which relief can be granted.

### B. *Amcash's Cross–Motion for Leave to Amend*

Amcash cross-moves for leave to amend its counterclaims, but has failed to supply the Court with the proposed amendments. Nor has Amcash provided the Court with any suggestion as to the nature of its proposed amendments in any of its papers submitted to the Court. In its Memorandum in Opposition to AT & T's Motion to Dismiss the Counterclaims and in Support of Amcash's Motion for Leave to Amend the Counterclaims, Amcash states that it "seeks to amend the counterclaims to assert the affirmative defenses outlined in the annexed motion." (Mem. in Opp'n at 6). It is unclear, however, to what Amcash refers, for no "annexed motion" exists. Amcash did not, in fact, annex any additional papers.

Federal Rule of Civil Procedure 7(b) requires that motions "state with particularity the grounds therefor, and ... set forth the relief or order sought." To satisfy the requirement of particularity in a motion to amend a pleading, the proposed amended pleading must accompany the motion "so that both the Court and opposing parties can understand the exact changes sought." *Smith v. Planas*, 151 F.R.D. 547, 550 (S.D.N.Y.1993). "Where the proposed amended [pleading] does not accompany the motion to amend, the Court may hold the motion in abeyance pending the filing of that proposed [pleading], or the Court may deny the motion without prejudice." *Id.* (citations omitted).

In the circumstances before the Court, where I have dismissed the counterclaims, I will not hold the motion in abeyance. Rather, Amcash's cross-motion for leave to amend the counterclaims is denied. The parties shall appear for a pretrial conference on March 5, 1999 at 4:30 in Courtroom 11A at 500 Pearl Street.

SO ORDERED.